UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHIRLPOOL CORP.,

        Plaintiff,

v.

THE GRIGOLEIT CO.,

        Defendant.

_____/

Case No. 1:06-CV-195

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant The Grigoleit Company's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion has been fully briefed and the Court discerns no reason to hear oral argument. W.D. LCIVR 7.2(d). For the reasons that follow, the Court will grant Defendant's Motion.

**I.    BACKGROUND**

Plaintiff Whirlpool Corporation is a global manufacturer and marketer of major home appliances, operating from its headquarters in Benton Harbor, Michigan.[1] Defendant supplies Plaintiff with component parts for end use in Plaintiff's appliances from its headquarters in Decatur, Illinois. This action concerns a commercial dispute that arose under this relationship and is properly before the Court on diversity jurisdiction.[2] 28 U.S.C. § 1332.

---

[1] The Court has relied heavily on Plaintiff's Complaint in this section and, under Rule 12(b)(6), accepted as true Plaintiff's factual allegations. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 568 (6th Cir. 2004).

[2] Plaintiff is a Delaware corporation whereas Defendant is incorporated under Illinois law. Defendant removed Plaintiff's Complaint to this Court from Berrien County Circuit Court. Plaintiff has not objected to removal.

Prior to this lawsuit, Plaintiff routinely purchased knobs from Defendant for use in its Roper, Estate, and Thin-Twin brand washing machines and dryers. Defendant was Plaintiff's sole supplier of these particular knobs. Plaintiff does not claim, however, that Defendant was contractually obligated to supply it with knobs. In March 2003, Defendant prepared a bid to supply Plaintiff with knobs for its new product line, but that bid was rejected in favor of a lower bidder. In November 2004, Defendant notified Plaintiff that it was increasing the price of its knobs because the volume of parts Plaintiff purchased fell below the level Defendant originally quoted. Plaintiff claims the price increase was in retaliation for its rejection of Defendant's bid.

On December 22, 2004, Defendant began threatening to interrupt Plaintiff's manufacturing operations by refusing to sell Plaintiff its knobs unless Plaintiff agreed to its price increase. On January 14, 2005, Defendant proposed an agreement with Plaintiff for the purchase of Defendant's parts, but also at that time informed Plaintiff that it would cancel their supply chain relationship by January 31, 2005. On January 31, 2005, Defendant refused to accept any new purchase orders from Plaintiff but continued to honor Plaintiff's previously scheduled orders.

Faced with a potential parts shortage and ultimate production stoppage, Plaintiff negotiated and executed a parts agreement with Defendant on February 25, 2005. The agreement called for an average price-per-part-increase of 326%. Plaintiff also agreed to make a $40,000 advance payment to Defendant. Eventually, Plaintiff found an alternative knob supplier and ceased sending Defendant purchase orders.

On November 28, 2005, Defendant shipped Plaintiff its existing knob inventory that it had specifically produced for Plaintiff. Defendant also informed Plaintiff of its intentions to invoice Plaintiff for partially produced knobs and raw materials. Plaintiff then brought this suit because it

believes that its agreement with Defendant is void and that it is not obligated to accept Defendant's shipped inventory or make any payments under the agreement.

## II. LEGAL STANDARDS

As a threshold matter, the Court notes that because this case is before it on diversity jurisdiction, it is bound to apply Michigan law to resolve the substantive merits presented. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Thus, the Court is obligated to first look to the Michigan Supreme Court or Michigan Compiled Laws for primary legal authority. If the Michigan Supreme Court or Legislature has not addressed a particular issue, only then will the Court determine Michigan law based on decisions of the Michigan Court of Appeals, federal court interpretations of Michigan law, restatements of the law, scholarly commentary, and the majority rule among other states. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (1995) (internal citations omitted). Concerning matters of procedure, the Court is guided by Title 28 of the United States Code and the Federal Rules of Civil Procedure. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

Regarding Defendant's Motion, whether dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law.[3] *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005); *Smith*, 378 F.3d at 570; *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004). The Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, *Smith*, 378 F.3d at 568, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle it to relief. *Roberson*, 399 F.3d at

---

[3] The Court observes that Defendant has asked the Court to consider the parties' agreement, which was attached to Plaintiff's Complaint as an exhibit, and thus, considered part of that pleading. FED. R. CIV. P. 10(c). Therefore, Defendant has confined its dismissal arguments to Plaintiff's Complaint, and the Court will limit its review to Rule 12(b)(6), rather than Rule 56. *See* FED. R. CIV. P. 12(b).

794; *Arrow*, 358 F.3d at 393.  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997); *Columbia Natural Res. Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

Although Rule 12(b)(6) clearly affords Plaintiff some liberties, it does require more than the bare assertion of legal conclusions.  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001); *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000).  "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (quoting *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  With these principles in mind, the Court will address the merits of Defendant's Motion.

**III.   DISCUSSION**

Plaintiff's Complaint lodges two counts of liability against Defendant.  The first being, because Defendant exacted economic duress upon Plaintiff, it wrongfully forced Plaintiff to execute the agreement and said agreement is void.  Plaintiff's second cause of action asks the Court to declare the same and determine its obligations (if any) under the agreement pursuant to Michigan Court Rule 2.605(A)(1).

The Court begins by noting that the Uniform Commercial Code, as adopted by the Michigan Legislature, technically governs the parties' agreement.  *See* MICH. COMP. LAWS §§ 440.2102 & 440.2105(1).  However, because Plaintiff seeks to avoid the agreement on an equitable theory of duress, the Court will look to Michigan contract law as articulated by the judiciary.  *Id.* § 440.1103

("Unless displaced by the particular provisions of this act, the principles of law and equity . . . relative to . . . duress . . . shall supplement its provisions.").

Duress is an equitable doctrine that works as a defense to contract formation because it is thought that one party's expression of mutual assent arose from coercion, and thus, did not voluntarily agree to the bargain. In Michigan, to succeed on a claim of duress and avoid an otherwise valid contract, Plaintiff must establish that it was illegally compelled or coerced to act by fear of serious injury to it, its reputation, or its fortune. *Norton v. Mich. State Highway Dep't*, 24 N.W.2d 132, 135 (Mich. 1946) (citing *Hackley v. Headley*, 8 N.W. 511, 512-13 (Mich. 1881) (other citations omitted). Defendant has seized upon the language of *Norton* and asserts that Plaintiff has failed to plead a theory of duress because Plaintiff's Complaint is bereft of any allegation of illegality against it. In response, Plaintiff believes it is enough to plead duress when it assigned wrongful or improper conduct to Defendant.

Upon careful review of Michigan jurisprudence, the Court finds that one seeking to avoid a contract claimed to be the product of duress must plead illegal compulsion to state a valid claim. Plaintiff has made a forceful and compelling argument that Michigan should relax its treatment of duress and allow the defense absent a claim of illegality. *See* RESTATEMENT (SECOND) OF CONTRACTS § 175 (1981). Even so, the Michigan Supreme Court has never retreated from the rule first espoused in *Hackley* where duress was described as: "the *unlawful* act of another . . . induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." *Hackley*, 8 N.W. at 512-13 (emphasis supplied); *see also Stefanac v Cranbrook Educ. Cmty.*, 458 N.W.2d 56, 74 n.40 (Mich. 1990) (Levin, J. dissenting) (noting that Michigan law lags behind the majority of states because it still requires illegality to avoid a contract by duress);

-5-

*Beachlawn Bldg. Corp. v. City of St. Clair Shores*, 121 N.W.2d 427, 429-30 (Mich. 1963); *Finn v. Miller*, 47 N.W.2d 660, 662 (Mich. 1951); *Gill v. S.H.B. Corp.*, 34 N.W.2d 526, 528-29 (Mich. 1948); and *Norton*, 24 N.W.2d at 135. The requirement of illegality for the defense of duress has also been readily repeated in the Michigan Court of Appeals, *see, e.g., Farm Credit Servs. of Michigan's Heartland, P.C.A. v. Weldon*, 591 N.W.2d 438, 447 (Mich. App. 1998); *Enzymes of Am. v. Deloitte, Haskins & Sells*, 523 N.W.2d 810, 814 (Mich. App. 1994) ("Illegality is an element of duress."); *Apfelblat v. Nat'l Bank Wyandotte-Taylor*, 404 N.W.2d 725, 728 (Mich. App. 1987); *Barnett v. Int'l Tennis Corp.*, 263 N.W.2d 908, 912-13 (Mich. App. 1987), and enjoys similar appeal before the federal bench.[4] *Truform Inc. v. Gen. Motors Corp.*, 80 Fed. Appx. 968, 978-79 (6th Cir. 2003); *Transcon. Leasing Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984); *Oliver v. City of Berkley*, 261 F. Supp. 2d 870, 877 n.2 (E.D. Mich. 2003); *Myers v. United States*,

---

[4] Plaintiff relies heavily on *Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp.*, 749 F. Supp. 794 (E.D. Mich. 1990). In that case, the district court predicted that if the Michigan Supreme Court revisited the issue of economic duress, it would no longer require unlawful coercion to state a cause of action. *Id.* at 797 n.5. Given that *Kelsey*'s herald did not prove true, this Court does not regard it as persuasive authority. Furthermore, while a federal court may be called upon to predict Michigan Supreme Court precedent in the absence of controlling authority, when Michigan's highest court has expressly considered a particular issue, federal courts are not free to disregard that edict and conclude that it would now change its mind. *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 604 (6th Cir. 1975). Since the Michigan Supreme Court had expressly and repeatedly held that in order to avoid a contractual obligation because of duress, one must allege unlawful coercion, *see, e.g., Norton*, 24 N.W.2d at 135, that rule was controlling and the *Kelsey* court was constitutionally required to abide by it. Plaintiff's reliance on *In re Rochkind*, 128 B.R. 520, 525-26 (E.D. Mich. 1991) suffers from the same defect. Finally, Plaintiff's suggestion that *Gen. Motors Corp. v. Paramount Metal Prods. Co.*, 90 F. Supp. 2d 861 (E.D. Mich. 2000) and this Court's decision in *E.E.O.C. v. Prevo's Family Market Inc.*, No. 1:95-CV-446, 1996 WL 604984 (W.D. Mich. Aug. 27, 1996) supports its position is erroneous. In *Paramount*, the court found that Ohio law controlled the question of duress, and therefore, lends no support. *Paramount*, 90 F. Supp. 2d at 870. In *Prevo's Market*, this Court found that because there was conflicting evidence of an illegal threat, summary judgment was inappropriate as to whether the plaintiff took leave voluntarily. *Prevo's Market,* 1996 WL 604984, at *4. Therefore, *Prevo's Market* is consistent with Michigan precedent.

943 F. Supp. 815, 819 (W.D. Mich. 1996); *Cochran v. Ernst & Young*, 758 F. Supp. 1548, 1556-57 (E.D. Mich. 1991); *Oak Distrib. Co. v. Miller Brewing Co.*, 370 F. Supp. 889, 908 (E.D. Mich. 1973). Because this Court's constitutional mandate counsels obedience to Michigan precedent, the Court's duty is to neither divine a rule of Michigan law as its own nor comment on the providence of existing precedent, but to apply Michigan law, without reservation. *Erie R.R.*, 304 U.S. at 78. Therefore, this Court finds that in order to avoid the parties' agreement on a theory of duress, Plaintiff must plead illegality at the hands of Defendant.

In the alternative, Plaintiff also claims that it has alleged Defendant acted unlawfully in coercing its assent to the agreement. Even after the most indulgent review of Plaintiff's Complaint, the Court must disagree. When pressed by Defendant's Motion as to how Defendant behaved illegally, Plaintiff merely responds that Defendant threatened to cease selling Plaintiff its much needed knobs (which would cause a production interruption) unless Plaintiff agreed to Defendant's proposed terms. Plaintiff has never alleged that Defendant was obligated in any way to continue selling knobs to it.

Against the backdrop of Federal Rule of Civil Procedure 12(b)(6), the Court is convinced that Plaintiff has failed to articulate a valid theory of duress because it has not pled anything even remotely illegal or unlawful on Defendant's behalf. The Court cannot accept Plaintiff's conclusory allegation of illegality because there is simply no way Plaintiff can show Defendant acted unlawfully based on the representations made in its Complaint. Despite Plaintiff's invitation, the Court is not inclined to disturb an agreement struck between two sophisticated commercial enterprises and undo the benefit of their bargain simply because one brought to bear the lawful force of the marketplace on the other. "Fear of financial ruin alone is insufficient to establish economic duress; it must also

be established that the person applying the coercion acted unlawfully." *Apfelblat*, 404 N.W.2d at 728 (citing *Transcon. Leasing*, 738 F.2d at 166). Thus, the Court finds that dismissal of Count I is warranted because it fails to state a claim upon which relief can be granted.

As for Count II of Plaintiff's Complaint, Plaintiff's request for declaratory relief also fails to articulate a claim upon which relief can be granted. Entitlement to declaratory relief requires there be an actual controversy between litigants.[5] MICH. CT. R. 2.605(A)(1). Plaintiff's Complaint surmised there was an actual controversy in this case because it believed the agreement was voidable out of duress. However, the Court has already determined that duress is no defense to the parties' agreement and that point no longer remains in controversy. Plaintiff makes much out of the fact that it has also asked the Court to declare its rights and obligations under the agreement. Specifically, Plaintiff averred that it has no obligations concerning Defendant's inventory of finished and partially finished knobs and its invoice for raw materials. Even so, the only basis Plaintiff articulates in its Complaint for the declaratory relief sought is duress. Nowhere in Plaintiff's Complaint does it claim that it is unaccountable for the knobs and raw materials because Defendant's shipments were defective, misdelivered, or an otherwise unacceptable tender. Its only denial of responsibility was premised on a finding of duress. Therefore, because the sole source of contention pled in Plaintiff's Complaint has been eliminated, the Court finds no controversy remains between the parties. Accordingly, the Court finds that dismissal of Count II is appropriate.

Finally, Plaintiff has glibly requested leave to amend its Complaint (*via* its Response) under Federal Rule of Civil Procedure 15(a). Because a motion to dismiss is not a responsive pleading and Defendant has not served Plaintiff with an answer, *Youn v. Track Inc.*, 324 F.3d 409, 415 & n.5 (6th

---

[5] The federal Declaratory Judgment Act requires the same. *See* 28 U.S.C. § 2201.

Cir. 2003); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 420 (6th Cir. 2000), leave to amend is not required. The Court observes that Plaintiff has not filed an amended complaint—as it was entitled to do—or even hinted at how it planned to cure the deficiencies present. Thus, the Court will decide Defendant's Motion based on the pleadings before it and, for the reasons discussed above, dismiss Plaintiff's Complaint. If Plaintiff "had *any* grounds for amending, [it] could have amended as a matter of *right* at the time" it made its half-hearted request in its Response. *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir. 1989) (emphasis in original). "Obviously, either [it] had no additional facts or [it] felt [it] had stated a claim." *Id.* "The premature request for leave to amend [i]s without basis and [i]s a mere 'shot in the dark.'" *Id.*

While the Court is doubtful an amendment could resurrect Plaintiff's Complaint within the realm of a viable cause of action (or at least a fruitful one), should Plaintiff still wish to pursue an amendment it shall do so by motion, FED. R. CIV. P. 15, setting forth with particularity the basis for the amendment in conjunction with a motion for postjudgment relief. *See* FED. R. CIV. P. 59(e) & 60(b); *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002).

### IV.    CONCLUSION

Therefore, the Court will grant Defendant The Grigoleit Company's Motion to Dismiss. A Judgment consistent with this Opinion shall enter.

Dated in Kalamazoo, MI:              /s/Richard Alan Enslen
July 13, 2006                        Richard Alan Enslen
                                     Senior United States District Judge