UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHIRLPOOL CORPORATION,

    Plaintiff,

v.

THE GRIGOLEIT COMPANY,

    Defendant.

Case No. 1:06-CV-195

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant The Grigoleit Company's Motion to Dismiss Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion has been fully briefed and the Court discerns no reason for oral argument. *See* W.D. MICH. LCIVR. 7.2(d).

**I.   BACKGROUND**

Plaintiff Whirlpool Corporation is a global manufacturer and marketer of major home appliances, and its headquarters are located in Benton Harbor, Michigan.[1] Defendant manufactures and supplies appliance components to various manufacturers. Defendant supplies Plaintiff with component parts for use in Plaintiff's appliances from its headquarters in Decatur, Illinois. This action concerns a commercial dispute which arose under this relationship and is before the Court on diversity jurisdiction. 28 U.S.C. § 1332.

For a number of years, Plaintiff purchased knobs from Defendant for its Roper, Estate, and Thin-Twin brand washers and dryers. Defendant was Plaintiff's sole supplier of these knobs; however, Plaintiff has not alleged that Defendant was contractually obligated to supply it with the particular knobs. In March 2003, Defendant submitted a bid to supply Plaintiff with knobs for a new

---

[1] As the Court noted in its Opinion of July 13, 2006, it relies heavily upon Plaintiff's now Amended Complaint in this section, and under Rule 12(b)(6), accepts Plaintiff's factual allegations as true. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 568 (6th Cir. 2004).

product line. This bid was rejected by Plaintiff in favor of a lower bid. Defendant continued to supply Plaintiff with knobs for its Roper, Estate, and Thin-Twin brands. In November 2004, Defendant notified Plaintiff it intended to increase the price of the knobs for the reason that the volume of parts had fallen below the levels originally quoted. Plaintiff contends that the intended price increase was in retaliation for its rejection of Defendant's bid some 18 months prior.

On December 22, 2004, Defendant threatened to interrupt Plaintiff's manufacturing operations by refusing to sell Plaintiff the knobs unless Plaintiff agreed to the price increase. On January 14, 2005, Defendant proposed an agreement with Plaintiff for the purchase of the knobs and at the same time advised Plaintiff it would cancel all purchase orders by January 31, 2005. On January 31, 2005, Defendant terminated Plaintiff's purchase orders, although it continued to ship the previously scheduled orders.

Faced with a potential interruption of business because of a shortage of parts, Plaintiff executed a parts agreement with Defendant on February 25, 2005. Plaintiff alleges it executed the agreement against its will. The agreement called for an average-per-part-increase of 326% and included an up-front lump sum payment by Plaintiff in the amount of $40,000.00. Plaintiff alleges the agreement was substantively unreasonable and unconscionable.

On November 28, 2005, Defendant shipped Plaintiff its existing knob inventory produced specifically for Plaintiff. Defendant shipped the inventory to Plaintiff's warehouse, allegedly in violation of paragraph 5(c) of the February Agreement. Defendant notified Plaintiff the following day it would invoice Plaintiff for all of the in-process components and raw materials.

Plaintiff then brought this action alleging economic duress and requesting a declaratory judgment finding the agreement voidable. Plaintiff's original Complaint was dismissed because the

Court determined that Plaintiff had failed to state a claim, namely Plaintiff failed to ground its claim of economic duress in illegal conduct by Defendant as required under Michigan law.  Plaintiff then sought and was granted leave to amend its Complaint.  Defendant has now moved again to dismiss the Amended Complaint for failure to state a claim.

## II.     LEGAL STANDARD

The Court notes this case is before it on diversity jurisdiction and it is therefore bound to apply Michigan law to resolve the substantive merits presented.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Thus, the Court is obligated to first look to the Michigan Supreme Court or Michigan Compiled Laws for primary legal authority.  If the Michigan Supreme Court or Legislature has not addressed a particular issue, only then will the Court determine Michigan law based on decisions of the Michigan Court of Appeals, federal court interpretations of Michigan law, restatements of the law, scholarly commentary, and the majority rule among other states.  *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (1995) (internal citations omitted).  Concerning matters of procedure, the Court is guided by Title 28 of the United States Code and the Federal Rules of Civil Procedure.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

Whether dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law.  *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004).  The Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, *Smith*, 378 F.3d at 568, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Roberson*, 399 F.3d at 794; *Arrow*, 358 F.3d at 393.  Though decidedly liberal, Rule 12(b)(6) does

require more than the bare assertion of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001); *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997); *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Bovee*, 272 F.3d at 360; *Saglioccolo*, 112 F.3d at 228-29; *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

**III. ANALYSIS**

As in Plaintiff's original Complaint, Plaintiff alleges Defendant exacted economic duress upon Plaintiff, Plaintiff executed the agreement against its will, and therefore, the agreement is voidable. Plaintiff also again requests a declaratory judgment pursuant to Michigan Court Rule 2.605(A)(1). In the Amended Complaint, Plaintiff alleges, in support of its claim of economic duress, that Defendants actions amounted to extortion and also violated three sections of the Michigan Uniform Commercial Code. Plaintiff's request for declaratory judgment now encompasses the allegations of dispute over interpretation and application of certain terms in the parties' agreement. Plaintiff requests the Court declare the agreement voidable because of duress, determine its obligations under the agreement, find the agreement unenforceable because the it is unreasonable and/or unconscionable under Mich. Comp. Law § 440.2302, and also declare Defendant violated its obligations as a seller in terminating the purchase orders under Mich. Comp. Law §§ 440.2301, 440.2302(1).

Defendant moves to dismiss the Amended Complaint arguing that although Plaintiff may have added the crime of extortion and violations of the Michigan Uniform Commercial Code to its Amended Complaint, the action still fails to state a claim. Defendant avers that Plaintiff has not alleged any facts which support the named crimes and therefore the Amended Complaint should be dismissed.

A.  Count I- Economic Duress

In Michigan, to succeed on a claim of duress and void an otherwise valid contract, Plaintiff must establish that it was illegally compelled or coerced to act by fear of serious injury to it, its reputation, or its fortune.[2] *Norton v. Mich. State Highway Dep't*, 24 N.W.2d 132, 135 (Mich. 1946) (citing *Hackley v. Headley*, 8 N.W. 511, 512-13 (Mich. 1881) (other citations omitted)). As previously explained by this Court, "one seeking to avoid a contract claimed to be the product of duress must plead illegal compulsion to state a valid claim." (Op. at 5.) Plaintiff has taken the Court at its word and has amended its Complaint to include the crime of extortion as well as three violations of Michigan's Uniform Commercial Code in support of its claim of economic duress. However, for the reasons detailed below, the Court holds that Plaintiff has failed to state a claim for economic duress.

1.  Extortion

Under Michigan law, to be guilty of extortion, one must:

(1) maliciously threaten, orally or by written or printed communication;
(2) either
    (a) to accuse another of any crime or offense or

---

[2]Plaintiff again argues Michigan should relax its treatment of duress. However, this argument was fully addressed in the Court's previous Opinion and Order and there is no change in Michigan's law to necessitate it be revisited. (*See* Op. at 5-7.)

5

>> (b) to cause injury to the person or property or mother, father, husband, wife or child of another;
> (3) with intent thereby either to
>> (a) extort money or any pecuniary advantage whatever, or
>> (b) compel the person so threatened to do or refrain from doing any act against his will.

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 325 (6th Cir. 1999) (citing MICH. COMP. LAW § 750.213).  Defendant argues that although Plaintiff has successfully inserted the word extortion into its Amended Complaint, the deficiency of the claim has not been cured.  Plaintiff argues Defendant is improperly attacking the merits of its extortion claim and under Rule 12(b)(6), this attack is unwarranted.

In its previous Opinion, this Court made clear that Plaintiff failed to establish Defendant acted illegally when Plaintiff merely asserted that "Defendant threatened to cease selling Plaintiff its much needed knobs (which would cause a production interruption) unless Plaintiff agreed to Defendant's proposed terms." (Op. at 7.)  The Court is now faced with a similar situation.  It is true, Plaintiff has dutifully assigned a name to Defendant's illegal conduct (extortion); however, Plaintiff, yet again, "has never alleged that Defendant was obligated in any way to continue selling knobs to it." (Op. at 7.)

Under Michigan extortion law, "a threat to bring a civil suit to enforce one's rights cannot give rise to an action under the extortion statute." *Id*. (citing *Various Mkts., Inc. v. Chase Manhattan Bank*, 908 F. Supp. 459, 468 (E.D. Mich. 1995)).  In *Various Markets*, the district court found a bank's threat of instituting "costly legal proceedings and, through its pursuit of its proposed lawsuit, would financially 'destroy' [plaintiffs], does not amount to a threat or the exercise of unlawful coercion giving rise to a legally cognizable claim for extortion." *Various Mkts*., 908 F. Supp. at 469.

Further elucidating upon the predicates for an extortion claim in Michigan, the court noted that "[i]llegality is the foundation of an extortion claim" and where there is no illegal threat, there is no extortion. *Id*. at n.12.

Plaintiff argues it has properly pled that Defendant maliciously threatened to shut down its production to extort money, which is "enough to state a claim under Michigan's extortion statute." (Pl.'s Resp. at 10.) It further argues that whether Defendant had a right to terminate the commercial relationship is not relevant. (*Id*.) The Court disagrees. In the present action, Plaintiff has not alleged Defendant had any obligation to continue selling it knobs. Plaintiff has also failed to allege how Defendant's threat to legally stop selling it knobs is an illegal act. Plaintiff has not alleged that Defendant did not have the legal right to terminate the commercial relationship. Illegality is the foundation of an extortion claim, and economic duress requires a showing of illegal conduct. Plaintiff's Amended Complaint is a house of cards; although fulfilling the mandate of the Court to ground its economic duress claim in illegality, Plaintiff has failed to allege its extortion claim in the same. Rule 12(b)(6) requires more than the bare assertion of legal conclusions and where Plaintiff has failed to allege Defendant's conduct was illegal, its claim of extortion fails. *Bovee*, 272 F.3d at 361.

2.      Michigan Uniform Commercial Code

Plaintiff pleads violations of Michigan's Uniform Commercial Code as the illegal conduct on which to base the claim of economic duress. Plaintiff argues that violations of Michigan's Uniform Commercial Code arise to "illegal conduct" which economic duress can be based upon.

7

a. Unreasonable and unconscionable

Plaintiff asserts the agreement executed in February 2005, is substantively unreasonable and unconscionable in violation of Mich. Comp. Law § 440.2303. In Plaintiff's Response to the Motion to Dismiss, Plaintiff fails to cite any Michigan authority where a Court has found "illegal" conduct based on a violation of the Michigan Uniform Commercial Code. The Court, in researching, also discovered a complete dearth of case law on the subject. Plaintiff asserts it has properly pled the elements of unconscionability and appears to argue that because the UCC is codified, such a properly pled violation of the UCC is "illegal conduct."

One seeking to avoid a contract claimed to be the product of duress must plead illegal compulsion to state a valid claim. *Norton*, 24 N.W.2d at 135. In the instant case, Plaintiff has attempted to plead that the unconscionable February 2005 contract somehow fits this need. After review, the Court believes that unconscionability does not rise to the level of 'illegal compulsion' which the Michigan courts require for economic duress. Plaintiff has submitted to the Court case law in which courts have found unconscionability as a basis to hold a contract unenforceable, yet no case law in which a court has found unconscionability to be illegal conduct or compulsion giving rise to an economic duress claim. In fact, unconscionability is more aptly understood as the effect of a contract which is exacted by economic duress. Logically then, such a violation could not be the cause or the illegal compulsion of economic duress. Therefore, this Court does not believe that a Michigan court presented with this claim would find a claim of unconscionability could support an action of economic duress. Accordingly, this alleged violation is insufficient upon which to base a claim of economic duress.

b. Good faith obligation

Plaintiff's attempt to ground economic duress in a violation of the good faith obligation, Mich. Comp. Law § 440.1203, does not make any sense, nor is it successful. As the official comment to Section 1203 states:

> This section does not support an independent cause of action for failure to perform or enforce in good faith. <u>Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power.</u> This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and <u>does not create a separate duty of fairness and reasonableness which can be independently breached</u>.

Mich. Comp. Law § 440.1203 (emphasis added). In this context, Plaintiff attempts to plead a violation of good faith obligation as an independent cause of action. Plaintiff has completely omitted from its Amended Complaint any hint that Defendant breached a contract or specific obligation under a contract by not delivering or producing the knobs. As detailed above, Plaintiff cannot allege a violation of good faith without alleging Defendant failed to perform or enforce a specific duty or obligation under the contract. Further, much like Plaintiff's claim of unconscionability, this claim is dependant upon the existence of a contract. Here, where Plaintiff attempts to plead a violation of a good faith obligation as an 'illegal compulsion,' such a claim will not stand. Therefore, this violation also fails to support a claim of economic duress.

c. Obligation of the Seller

Plaintiff alleges Defendant's termination of its purchase orders violated Defendant's obligations under Mich. Comp. Law § 440.2301. (Am. Compl. ¶ 31.) Section 2301 provides "The obligation of the seller is to transfer and deliver . . . in accordance with the contract." As Defendant

9

accurately observes in its Reply, Plaintiff has not alleged Defendant violated any section of the agreement when it terminated its purchase orders. Therefore, where Plaintiff has failed to allege what is needed to support such a claim, the claim shall fail.

B.    Count II - Declaratory Judgment

    1.    Economic Duress

Defendant argues that because Plaintiff has again failed to state a claim of economic duress, it's request for declaratory relief on that basis also fails to articulate that claim. The Court agrees. Entitlement to declaratory relief requires there be an actual controversy between litigants. MICH. CT. R. 2.605(A)(1); *see also* 28 U.S.C. § 2201 (federal Declaratory Judgment Act requires the same.) As the Court has determined that duress is not a defense to the parties' agreement, there is no controversy on that point. Therefore, to the extent Plaintiff's request for declaratory relief is premised upon economic duress, it shall be dismissed.

    2.    UCC claims

Plaintiff's Amended Complaint requests declaratory relief on the basis of the previously examined sections of Michigan's UCC. Specifically, Plaintiff seeks a declaration that: (1) the agreement is unenforceable as being substantively unreasonable and/or an unconscionable contract under the UCC and (2) Defendant violated its obligation in the sale of goods and termination of purchase orders as a failure to deliver. Plaintiff also requests a declaration as to the rights and obligations of the parties under the agreement.

"Unconscionability has generally been recognized to include the absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party." *Allen v. Mich. Bell Tel. Co.*, 171 N.W.2d 689, 692 (Mich. App. 1969) (citation

omitted). In examining a claim of unconscionability, there is a two-prong test for determining whether a contract is unenforceable as unconscionable: "(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word what are their options?; (2) Is the challenged term substantively reasonable?" *Id.*; *see also Hubscher & Son, Inc. v. Storey*, 578 N.W.2d 701, 703 (Mich. App. 1998) (employing the same standard). In the Amended Complaint, Plaintiff has alleged it had no alternative but to acquiesce to the price terms of the February agreement or it would suffer a work shortage. Plaintiff also alleged the price increase in the agreement was substantively unreasonable. Therefore, Plaintiff has properly pled unconscionability under Michigan law and Defendant has failed to show that no controversy exists as to this issue.

Plaintiff argues it has properly pled the facts to support the claims of violations of the obligation of the seller and the good faith obligation under Michigan's UCC. Plaintiff alleged in its Amended Complaint that Defendant shipped parts to Plaintiff's warehouse in violation of the agreement and disputes that it must pay for certain finished goods, in process components, and raw materials. Although the Court previously found Plaintiff's request for a declaration was only based upon whether the agreement was voidable due to economic duress, Plaintiff has now stated a claim as to whether the agreement is unenforceable due to its unconscionability. Therefore, in a light most favorable to the Plaintiff and accepting all the factual allegations as true, the Court finds Plaintiff has properly requested a declaratory judgment on these issues. *Smith*, 378 F.3d at 568.

Finally, Plaintiff asks the Court to declare the rights and obligations under the contract even if it is found valid and enforceable. The Court, in reviewing Plaintiff's Amended Complaint, finds

Plaintiff has alleged certain terms and their interpretations are in dispute.[3]  Although Defendant asserts these issues are not in dispute, the Court must construe all factual allegations in the Amended Complaint as true and a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.  *See Bovee*, 272 F.3d at 360.

Therefore, accepting all of the allegations in Plaintiff's Amended Complaint as true, Plaintiff has sufficiently pled its request for a declaratory action insofar as it is not based upon voiding the contract as a result of economic duress.

### IV.   CONCLUSION

Therefore, the Court will grant in part and deny in part Defendant's Motion to Dismiss the Amended Complaint.  The claim of economic duress will be dismissed for failure to state a claim. The request for a declaratory judgment will be dismissed for failure to state a claim to the extent it requests a declaration that the agreement is voidable due to economic duress.

An Order and Partial Judgment consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>February 1, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[3] Plaintiff alleges in its Complaint:

A current, on-going dispute exists between the parties with respect to interpretation of the Agreement, including but not limited to dispute about: (a) Defendant's failure to comply with the terms of paragraph 5(c) of the Agreement and its impact on any remaining obligations of the parties, if any, (b) what the "stated percentage of completion" is under paragraph 5, what the "laid-in voice price" is and means; (d) whether Whirlpool is obligated to accept the inventories of finished goods under the terms of the Agreement; (e) whether Whirlpool is obligated to pay Defendant for the quantities of in-process components and raw materials as Defendant demands; and (f) whether Whirlpool is obligated to pay the excessive monetary demands Defendant has made under the Agreement.

(Am. Compl. ¶ 26.)